56 F.3d 72
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 James E. NYHAN, Plaintiff-Appellee,
v.
Peggy L. KERNAN, Warden, Defendant-Appellant.
 No. 94-16192.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 12, 1995.
Decided June 2, 1995.
 
 Appeal from the United States District Court for the Northern District of California, No. CV-92-03769-MHP; Marilyn H. Patel, District Judge, Presiding.
 N.D.Cal.,
 REVERSED.
 Before: CUMMINGS,* SCHROEDER, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 California state prisoner James Edward Nyhan petitioned the district court pursuant to 28 U.S.C. Sec. 2254, challenging his conviction for second degree murder. He contended that the state court proceeding violated his due process rights because the trial court failed, sua sponte, to instruct the jury on an element of murder. The district court granted the petition and the state appeals. On appeal, the state correctly contends that the trial court did not fail to instruct the jury on an element of the charged offenses, but that the petitioner is instead seeking a retrial on a theory he raised for the first time on appeal in the state court and was there properly rejected. We reverse.
 
 BACKGROUND
 
 3
 The victim, David Renison, was a drug dealer who went to Nyhan's home on March 1, 1988, to collect on a debt that Nyhan owed him as part of a drug deal. Nyhan was not at home when Renison arrived, so he entered Nyhan's unlocked home and waited with his girlfriend for Nyhan to return. Nyhan returned home at approximately 5 p.m. A fight ensued in the kitchen between the two men, neither of whom was armed. The two "wrestled around the kitchen" until Nyhan "got hit in the back of the head" and tumbled down the basement stairs.
 
 
 4
 In his own words, Nyhan lost his temper and grabbed a .22 gauge pump rifle as he climbed back up the stairs. Nyhan pointed the gun at Renison, ordering him out of the house. Renison grabbed a telephone off the counter, threw it at Nyhan and charged across the kitchen at him, whereupon Nyhan fired the gun several times at Renison, chasing him across the kitchen and onto the back porch.
 
 
 5
 Nyhan fired the first shot at Renison in the kitchen, hitting him in the abdomen. Nyhan continued shooting him as he ran out the back door. A neighbor, Gene Hurt, arrived at the scene and found Renison lying on his back with outstretched arms and blood around his feet. He testified that Nyhan was "in a rage" with blood dripping from his head, and that he stood over Renison aiming a gun at him. Hurt told Nyhan to "leave him alone" and went to call 911. When the police arrived, they observed Nyhan leaning over Renison; Nyhan was bleeding from a gash in his head, and Renison was covered by a blanket. A police officer asked what had happened. Renison said he had been shot, and Nyhan said "I shot him in the leg."
 
 
 6
 The autopsy revealed that Nyhan died as a result of loss of over 2.0 liters of blood. The expert who performed the autopsy found that the mortal wound was the initial (abdominal) wound and that the other wounds would not have been life threatening.
 
 
 7
 Nyhan asserted imperfect self-defense as his trial defense. Defense counsel argued that Nyhan fired all the shots "in a flurry" and that he did not intend to kill because he was firing either in the heat of passion, as a result of the fight with the victim, or under the honest but mistaken belief that self-defense justified the use of deadly force. Counsel conceded at closing argument that Nyhan had no claim to reasonable self-defense and urged the jury to convict him of no more than manslaughter. The jury rejected the defense and convicted Nyhan of first-degree murder by torture in violation of Cal. Penal Code Sec. 187. He was sentenced to 25 years to life imprisonment on the murder charge.
 
 
 8
 The jury was instructed pursuant to CALJIC Sec. 8.50, which provides in relevant part:
 
 
 9
 When the act causing the death, though unlawful, is done in the heat of passion, or is excited by a sudden quarrel such as amounts to adequate provocation, or in the honest, but unreasonable, belief in the need [for self defense] ... the offense is manslaughter [and] ... malice is absent.
 
 
 10
 To establish that a killing is murder and not manslaughter, the burden is on the people to prove ... that the act which caused the death was not done in the heat of passion or upon a sudden quarrel or in the honest, even though unreasonable, belief in the necessity to defend against imminent peril to life or grave bodily injury.
 
 
 11
 CALJIC Sec. 8.50.
 
 
 12
 On appeal, Nyhan successfully contended that the record did not sufficiently establish premeditated intent to torture. The Court of Appeal ordered a reduction of his conviction to second-degree murder. Nyhan also argued that the trial court should have instructed the jury on proximate cause pursuant to CALJIC Sec. 8.55, which at the time of Nyhan's trial provided:
 
 
 13
 To constitute [murder] [or] [manslaughter] there must be, in addition to the death of a human being, an unlawful act which was a proximate cause of that death.
 
 
 14
 A proximate cause of a death is a cause which, in natural and continuous sequence, produces the death, and without which the death would not have occurred.
 
 
 15
 CALJIC Sec. 8.55 (pre-1992 version).
 
 
 16
 Nyhan's theory on appeal was founded upon evidence at trial that showed that only the first shot caused the death. He contended that if instructed on proximate cause, the jury could have found that the first shot was fired in honestly believed but unjustified self-defense, that he did not have any intent to kill until he fired the non-fatal shots, and that for that reason he was guilty of manslaughter.
 
 
 17
 The Court of Appeal correctly noted that under California law, an instruction need be given on proximate cause only when it is "in issue" in the case. See People v. Bernhardt, 222 Cal.App.2d 567, 591 (Cal. Ct. App. 1963). Nyhan's theory on appeal, i.e., that his state of mind changed between the firing of the first shot and the other shots, was never advanced in the trial court and, as the Court of Appeal pointed out, was expressly disavowed by his counsel. Rather, the defense argued that all of the shots were fired "in a flurry." The jury concluded that all the shots were fired with malicious intent. The Court of Appeal stated that the jury might have concluded from the expert's testimony that the abdominal wound was the sole cause of death, but added: "what it could not have concluded is that this wound was caused by a shot fired in self-defense." Therefore, the Court of Appeal concluded, even if CALJIC Sec. 8.55 had been given, the most that Nyhan could have hoped for was a conviction of second-degree murder in light of the theory advanced at trial.
 
 
 18
 In federal court, Nyhan challenges what is now a second-degree murder conviction, claiming that the failure to instruct on proximate cause constituted a failure to instruct on an element of the crime, and that this failure constituted a violation of the federal due process requirement that the state prove each and every element of the offense. See In re Winship, 397 U.S. 358, 366 (1970).
 
 DISCUSSION
 
 19
 The district court reasoned that had the proximate cause instruction been given, the jury could have concluded that Nyhan fired the first deadly shot in either the unreasonable belief that deadly force was justified or in the heat of passion after a legally sufficient provocation and could have found Nyhan guilty only of manslaughter. The problem is that the theory of changed intent urged on appeal and in the district court was never an issue in the case as it was argued to the jury. In fact, during a colloquy concerning the jury instructions, Nyhan's counsel represented that he would not argue that there was a valid theory of self-defense at the time the first shot was fired, nor would he argue that the first shot, and none of the later shots, caused Renison's death. Furthermore, Nyhan's counsel conceded in his closing argument that the shooting was unlawful and that even if Nyhan believed it to be in self-defense, that belief was "unreasonable."[1] Therefore, Nyhan's claim that CALJIC Sec. 8.55 should have been given does not support his argument for reversal. CALJIC Sec. 8.55 would have required the jury to find that an "unlawful" act proximately caused the death. As both murder and manslaughter constitute unlawful acts, and defense counsel conceded that all shots fired were unlawful, instruction under CALJIC Sec. 8.55 was not necessary. Because there was no issue as to whether an unlawful act proximately caused Renison's death, the failure of the trial court to give CALJIC Sec. 8.55 sua sponte did not relieve the government of proving an element of murder, and did not violate Nyhan's due process rights.
 
 
 20
 The judgment of the district court is REVERSED and the case REMANDED WITH INSTRUCTIONS TO ENTER AN ORDER DENYING THE PETITION.
 
 
 
 *
 Honorable Walter J. Cummings, United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The California Court of Appeal found that this statement was not ineffective assistance of counsel, and Nyhan does not challenge that holding here